**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WILLIAM JOSEPH JOHNSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-178-D** |
| | ) | |
| **JUSTIN JONES, DIRECTOR,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2241 seeking a writ of habeas corpus. Pursuant to an order by United States District Judge Timothy D. DeGiusti, the matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The issues have been thoroughly briefed, and an evidentiary hearing was conducted on December 18, 2012. Thus, the matter is ready for disposition.

For the reasons set forth below, the undersigned recommends that the Petition be **DENIED.**

## I. PROCEDURAL POSTURE

On February 22, 2011, Petitioner filed his petition for a writ of habeas corpus under 28 U.S.C. § 2241 [hereinafter Petition].[1] Judge Timothy D. DeGiusti referred the matter to then-Magistrate Judge Valerie K. Couch.

---

[1] Petitioner used the form for petitions brought under § 2254, but is challenging the execution of his sentence rather than his conviction. Accordingly, the petition has been construed as one arising under § 2241.

Petitioner seeks the writ on two grounds. In Ground One, Petitioner contends that the State of Oklahoma lost jurisdiction to re-incarcerate him when it allegedly released him on parole to serve a consecutive sentence imposed by the State of Washington. Petition, 5; ECF No. 1:4,10.[2]  In Ground Two, he alleges that the Oklahoma Department of Corrections has erred in its calculation of his sentence by unlawfully refusing to allow "street time" credits granted in connection with Petitioner's 2002 parole revocation, and failing to apply jail time credits with regard to his sentence in CF-1981-166, District Court of Cherokee County. Petition, 5; ECF No. 1:4, 32-37.

A response was filed [hereinafter Response]; ECF No. 8, and Petitioner replied. [hereinafter Reply]; ECF No. 12. Upon review of the Response[3] and the Reply,

---

[2] Because the record contains numerous exhibits, some that are duplicates, the undersigned has provided parallel citations to the Court's CM/ECF document numbers. The citation will follow Rule B7.1.4 of *The Bluebook: A Uniform System of Citation.* Under the Court's *ECF Policies & Procedures Manual*, § II.A.4., exhibits and attachments that are filed electronically are submitted as separate attachments to the document. In addition, because the ECF System automatically rejects filings that are greater than 10 megabytes, filers are encouraged to separate even single documents that are greater than 10 megabytes into smaller segments. Accordingly, ECF citations in this Court sometimes contain not only the main document number, but also this additional "attachment" number. For example, if ECF No. 8 is broken into several separate attachments; the first such attachment would be cited as "ECF No. 8-1." Pinpoint citations to page numbers within an ECF document will be in the following format: ECF No. 8-1:8.

[3] The undersigned notes that both grounds raised in this action appear to be barred by the AEDPA limitations period. *See* 28 U.S.C. § 2244(d)(1)(D). Petitioner was aware of the factual basis of his claim in Ground One no later than July 17, 2008, when he was released on an unrelated federal conviction to a detainer lodged by the Oklahoma Department of Corrections. Petition, Ex. 10D; ECF No. 1-2:21. He was aware of the factual basis of his claim in Ground Two by virtue of the 2003 Certificate of Release, ECF No. 1-2:5, which indicated a release date of August 1, 2022—putting Petitioner on notice that he had not been credited with the jail time and street time that he now claims. Petitioner's application for state post-conviction relief raising these issues was not filed until July 30, 2010, after the AEDPA limitations period had expired as to both claims. *See* Supplemental Index to Original Record, Certificate of Record, 2 (Cherokee County docket sheet for CF-1981-166); ECF No. 10 (conventionally filed). Nonetheless, the AEDPA limitations period is an affirmative defense, and it was clearly waived by the Respondent in the initial Response. *See* Response, ¶ 5; ECF No. 8:4. Despite Magistrate Judge Couch's invitation to address "any applicable affirmative defenses," Respondent again failed to note the timeliness issue. *See* Order to Respondent to Expand the Record, ECF No. 13:3; Supplemental Record, ECF No. 17. Accordingly, the defense was either intentionally relinquished or abandoned, and will not be

Magistrate Judge Couch directed Respondent to expand the record:

> Respondent is directed to expand the record to provide evidence sufficient for the Court to determine whether Petitioner is entitled to, and has been properly credited with street time granted by Governor Keating pursuant to the Certificate of Parole Revocation dated December 5, 2002. Such evidence may include, but should not be limited to, *sentencing audits conducted by the ODOC on Petitioner's sentences, the affidavit of the ODOC's official in charge of sentence administration and Petitioner's ODOC consolidated record card. See* Rule 7(b) ("The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers to interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record."). *In addition, Respondent is directed to provide legal analysis as to whether Petitioner's denial of street time credit claim raises a federal constitutional issue cognizable in this § 2241 proceeding*, and to address any applicable affirmative defenses thereto.

Order to Respondent to Expand the Record, ECF No. 13:3 (emphasis added).

Respondent's Supplemental Record and Authority was filed as directed [hereinafter Supplemental Record], followed by Petitioner's Response to Respondent's Supplemental Record and Authority [hereinafter Response to Supplemental Record]. ECF Nos. 17, 18. On April 11, 2012, this case was transferred to then-Magistrate Judge Robert Bacharach. On July 5, 2012, the matter was again transferred to the undersigned Magistrate Judge.[4]

---

considered. *Wood v. Milyard*, __U.S. ___, 132 S.Ct. 1826, 1835 (2012) (waiver is intentional relinquishment or abandonment of a known right and State's decision not to contest timeliness of petition fits that description); *Harmon v. Booher*, 271 Fed. Appx. 704, 707 n. 2 (10th Cir. Mar 25, 2008) (unpublished op.)

[4] The transfers were made due to the retirement, elevation, departure, and appointment of various Magistrate Judges during this time.

Upon review of the Petition, the original and supplemental responses, Magistrate Judge Couch's finding that expansion of the record was necessary, and a motion filed by Petitioner requesting an evidentiary hearing and appointment of counsel, EFC No. 19, the undersigned determined that a hearing regarding the issues should be held:

> The undersigned finds that an evidentiary hearing is necessary because, even after expansion of the record and supplemental briefing, the undersigned is unable to reliably determine the facts relevant to the second ground in support of Petitioner's request for habeas relief. In fact, the additional material submitted by Respondent has raised even more questions regarding the calculation of Petitioner's sentence in Case No. CF-1981-166, District Court of Cherokee County. The undersigned further finds that Petitioner has diligently tried to develop the factual basis for his claim in the state courts, and has presented a colorable claim that, if proved, would entitle him to relief on Ground Two.
>
> Moreover, the undersigned finds that it is in the interest of the efficient administration of justice to appoint qualified counsel to represent Petitioner, if he so desires. *See* General Order 09-03(F)(S)(a) (Mar. 9, 2009) (Regarding the Plan of the United States District Court for the Western District of Oklahoma for Implementation of the Criminal Justice Act, 18 U.S.C. § 3006A).

Order Granting Evidentiary H'rg and Appointment of Counsel, ECF No. 20:1-2.

Petitioner submitted the necessary financial affidavit, counsel was appointed, and a scheduling conference was conducted. ECF Nos. 22, 23, 24, 26. The hearing was held on December 18, 2012, and the parties submitted simultaneous post-hearing briefs on January 7, 2013.

## II. BACKGROUND

Petitioner is a state prisoner in custody of the Oklahoma Department of

Corrections (ODOC), and is currently housed at the Lawton Correctional Facility, Lawton, Oklahoma. Petitioner is serving a sentence of thirty-seven years imprisonment upon his conviction by a jury for the crime of robbery with firearms, Case No. CF-1981-166,[5] District Court of Cherokee County [hereinafter CF-1981-166]. Response, ECF No. 8-2:55.

In his initial response, Respondent stated that Petitioner is currently incarcerated on two other sentences as well as the one at issue in this action: Case No. CF-1982-914, District Court of Tulsa County (robbery by force); and CF-1982-1034, District Court of Tulsa County (robbery by force). Response, ¶ 2, ECF No. 8:1. However, these sentences (which were to run concurrently to Petitioner's sentence in CF-1981-166) have been discharged. *See* Response, ECF No. 8-2:43 (Consolidated Record Card); Supplemental Record, Ex. 1; ECF No. 17-1:1; Transcript of Evidentiary Hearing [hereinafter Hr'g Tr.] 100:17-19.

On July 22, 1983, Petitioner was received into the custody of the Oklahoma Department of Corrections on his Tulsa County Convictions. Respondent's Supplemental Brief Following Evidentiary Hearing [hereinafter Respondent's Supplemental Brief], Exs. 1-2; ECF Nos. 35-2: 1-2. On June 18, 1984,[6] Petitioner was received at the Oklahoma

---

[5] The undersigned notes that on the On Demand Court Records Data Base shows a case number of CF-1881-166. http://www1.odcr.com/detail?court=011-&casekey=011-CRF+8100166 (accessed Mar. 18, 2013).

[6] Both the 1992 Certificate of Parole and the 2002 Certificate of Parole Revocation state that Petitioner's sentence in CF-1981-166 was a "delayed cc" with an "effective date" of January 5, 1984. Supplemental Record, Exs. 2, 4, ECF Nos. 17-2, 17-4. However, Respondent, through affiant Kevin Moore, states that Petitioner began to serve his sentence in CF-1981-166 on June 18, 1984. Supplemental Record, Ex. 10, ¶ 2 (affidavit of Kevin Moore, Administrative Programs Officer, ODOC Sentence Administration Unit); ECF No. 17-10:1. There is no explanation of the term "effective date."

Department of Corrections (ODOC) to begin serving his sentence in Case No. CF-1981-166. Supplemental Record, Ex. 10; ECF No. 17-10:1. On April 10, 1992, Oklahoma Governor David Walters granted Petitioner parole. Supplemental Record, Ex. 2; ECF No. 17-2.

Almost ten years after his 1992 parole, Petitioner was convicted of one felony and two misdemeanor offenses in King County, Seattle, Washington. Case Nos. 01-1-05687-1 SEA and 01-1-05687-1 SEA "E" (felony malicious mischief, misdemeanor harassment, and misdemeanor resisting arrest) (Mar. 7, 2002); Petition, Exs. 4 and 5; ECF Nos. 1-1, 1-2. Petitioner was sentenced to incarceration in the King County Jail for ten months on the felony charge: twelve months on each of the two misdemeanor charges with two of those months suspended and all three sentences to run concurrently. *Id.* An Oklahoma parole violation warrant was issued on April 3, 2002, and on August 16, 2002, Mr. Johnson was returned to Oklahoma custody pursuant to that warrant. Supplemental Record, Ex. 10 (Affidavit of Kevin Moore, Administrative Programs Officer); ECF No. 17-10:1. On December 5, 2002, Petitioner's 1992 parole was revoked as a result of the Washington State convictions. Supplemental Record, ECF No. 8-2:13. The Certificate of Parole Revocation states:

> NOW, THEREFORE, I, Frank Keating, Governor of the State of Oklahoma, by virtue of the authority vested in me by law do hereby revoke, cancel, and annul the parole previously granted to William J. Johnson, DOC # 131510, and order

---

Throughout the record, there are various dates referenced as the date Petitioner's sentence in CF-1981-166 began to run. However, based on the sworn affidavit of Mr. Moore, the undersigned finds that Petitioner was received in ODOC custody to serve his sentence in CF-1981-166 on June 18, 1984.

that he be *incarcerated to serve one year of the remaining portion of his term, with credit for street time.*

Supplemental Record, Ex. 4; ECF No. 1-2:4 (emphasis added).

At the time of his release, Petitioner was confined at the Diamondback Correctional Facility as reflected on the February 14, 2003 "Certificate of Release." Petition, Ex. 7; ECF No. 1-2:5. The Certificate of Release states: "all applicable credits have been applied in conformity with statutes of the state of Oklahoma and established procedures of the Oklahoma Department of Corrections pursuant to case(s): *CRF-82-1034; CRF-82-914*." *Id.* (emphasis added). The Certificate of Release also states: "Documentation in your field file reveals that you are under a *term of supervised probation pursuant to cases CRF-82-1034 · CRF-82-914* until 8/1/22." Petition, Ex. 7: ECF No. 1-2:5 (emphasis added).

On October 25, 2007, Petitioner was convicted in the United States District Court for the Western District of Washington pursuant to a plea of guilty to the crime of unlawful imprisonment, Case No. CR-06-381Z. Petitioner was sentenced to a term of twenty-seven months imprisonment, followed by a three-year term of supervised release. Petition, Ex. 10A; ECF No. 1-2:18. He was thereafter committed to the custody of the United States Bureau of Prisons, and released on August 30, 2008, to an Oklahoma Department of Corrections detainer. *Id.* According to a letter to ODOC from the Federal Bureau of Prisons, Petitioner will be required to serve his three-year term of supervised release after he is released from ODOC custody. *Id.*

As a result of his federal conviction, another parole violator warrant was issued

on January 10, 2008. Supplemental Record, Ex. 8; ECF No. 17-8:1. On July 9, 2009, an executive parole revocation hearing was conducted, and it was recommended that Petitioner's parole be revoked to serve the remainder of his term—concurrent to his sentence in the federal criminal action. Supplemental Record, Ex. 8; ECF No. 17-8:4. On August 5, 2009, Oklahoma Governor Brad Henry issued the following Certificate of Revocation:

> Now, therefore, I, Brad Henry, Governor of the State of Oklahoma, by virtue of 57 O.S. § 516 (2002), do hereby REVOKE, CANCEL, AND ANNUL the parole previously granted to William J. Johnson, DOC # 131510, and order that he be incarcerated to serve the remaining portion of the term concurrently with the term received in CR06-381Z, with no credit for street time, in accordance with 57 O.S. § 350 (1987).

Supplemental Record, Ex. 7; ECF No. 17-7. Petitioner's Consolidated Record Card (CRC) shows that he was received into ODOC custody on September 30, 2008, and was moved to the Lawton Correctional Facility on December 12, 2008. Supplemental Record, Ex. 1; ECF No. 17-1:1. Upon his return to ODOC custody, Respondent created a CRC (because his previous CRC has been lost) stating that he had 7108 days remaining on his sentence in CF-1981-166. *Id.* at ECF No. 17-1:2.

## III. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2)

8

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173-74 (2010).

A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The Court does not apply AEDPA's deferential review standard when it holds an evidentiary hearing and considers new evidence that was not before the state court at the time it reached its decision, even if the state court resolved the claim on the merits. *Bryan v. Mullin*, 335 F.3d 1207, 1215-16 (10th Cir. 2003) (en banc)). Accordingly,

because a hearing was conducted on Ground Two, the undersigned is with regard to that ground "in the same position to evaluate the factual record" as was the state court, and "need not afford those findings any deference." *Id.*

## IV. FINDINGS OF FACT

### A. Introduction

On December 18, 2012, the undersigned conducted a hearing with regard to the issues raised in Ground Two of the Petition. Under 28 U.S.C § 2243, the Court shall hear and summarily determine the facts and dispose of the matter as law and justice require. Based on the hearing testimony, the Petition, ECF No. 1; the Response, ECF No. 8; the Supplemental Record, ECF No. 17; Petitioner's Response to the Supplemental Record, ECF No. 18; Petitioner's Motion for Hearing and Request for Appointment of Counsel, ECF No. 19; and the simultaneously filed, post-hearing briefs filed by each party, ECF Nos. 34 and 35, the undersigned makes the following findings of fact. At the hearing, Respondent stipulated that Petitioner has exhausted his state court remedies. H'rg Tr. 12:12-24.

As a preliminary matter, the undersigned notes that many of the exhibits offered at the hearing were already before the Court as exhibits to the various pleadings, responses, and briefs filed in the action. For the sake of the clarity, the undersigned will cite any exhibits referred to herein—including those offered at the hearing—by their ECF docket numbers. Although some documents cited herein appear as exhibits to more than one pleading or brief, the undersigned has included only one ECF cite for each

document.

Two witnesses testified at the hearing. Petitioner testified in support of his challenge to the execution of his sentence, and Respondent called one witness: Jim Rabon, administrator of sentence administration for ODOC. H'rg Tr. 51:21-23. Mr. Rabon's responsibilities in that capacity are to oversee the administration of how sentences are calculated, to determine whether or not earned credits apply according to the statutes and the case law, setting sentences up, following all the applicable laws, writing the policy and procedures to follow those laws and case law, and training of staff. Hr'g Tr. 51:24-25, 52:1-4. Mr. Rabon has been with the Department of Corrections since February 1, 1982. Hr'g Tr. 52:5-7. He testified that he was familiar with Petitioner William Joseph Johnson and "his case," and in preparation for the hearing had reviewed Petitioner's parole revocations and "a letter" he wrote to Mr. Johnson in 2011. Hr'g Tr. 52:8-15. However, after he was unable to answer a number of questions regarding Petitioner's sentence calculation, Mr. Rabon candidly admitted to the undersigned that he had not looked at Petitioner's file in preparation for the hearing. Hr'g Tr. 96:15-25, 97:1-7.

### B. Loss of Petitioner's Official Record

Before proceeding to the findings of fact relative to the merits of this Petition, the undersigned notes that it is undisputed that Petitioner's ODOC records have been lost, and that ODOC was aware of this fact as early as 2004. Although given several opportunities to do so, ODOC has failed to provide evidence to the Court that would

allow even an approximate reconstruction of the time Petitioner has served on his sentences since his initial incarceration. This is particularly confusing in light of the fact that Jim Rabon apparently assembled some documents and discussed the basis for the calculation of Petitioner's sentence with the attorney who represented Petitioner in his 2009 revocation proceeding. *See* Response, ECF No. 8-2:48.

### C. Facts Concerning Jail Time

At the hearing, Petitioner testified that he had never been credited with jail time on his sentence in CF-1981-166. Mr. Johnson testified that he spent about two years and eleven months in Cherokee and Tulsa county jails before being received into ODOC custody. H'rg Tr. 21:17-22. He further testified that in response to his inquiries regarding his jail time, was told by prison authorities that they would write to Cherokee County. H'rg Tr. 22:16-25; *see* Petition, Ex. 16D; ECF No. 1-3:15; 18-2:2-12. The Amended Judgment and Sentence in both Tulsa County cases (CF-1982-914[7] (robbery with firearm) and CF-82-1034 (robbery by force)) were admitted into evidence, showing that Petitioner was to serve twenty years imprisonment on each case, to run concurrently. ECF No. 8-2:36-39. They also provided that the sentences in those cases were to run concurrently to Petitioner's sentence in CF-1981-166 (robbery with firearms) and CF-1981-167, District Court of Cherokee County, and that he was to

---

[7] The Amended Judgment and Sentence in CF-1982-914, District Court of Tulsa County, appears to contain a scrivener's error. The Judgment and Sentence states that it was entered on July 12, **1984;** however, the document is file-stamped April 26, 1984, by the court clerk. ECF No. 8-2, p. 36. The second page of the document, containing the clause awarding jail time credits is dated April 17, 1984. ECF No. 8-2, p. 37. The Amended Judgment and Sentence in the companion case, CF-1982-1034, states that it was entered on July 12, **1983.** The second page of that document also contains a clause dated April 17, 1984, stating that the sentence is to run concurrently with the sentences imposed in CF-1981-166 and CF-1981-167, District Court of Cherokee County, with credit for jail time. ECF No. 8-2, p. 39.

receive credit for "time served" from December 19, 1981. H'rg Tr. 25:15-25; 26:15-19; ECF No. 8-2:36-39. In his post-hearing brief, Respondent attached two computer printouts entitled "Commitment Order," showing that Petitioner was credited with 471 days of jail time on his two Tulsa County sentences.

The Amended Judgment and Sentence in CF-1981-166, District Court of Cherokee County, dated June 14, 1984, sentenced Petitioner to thirty-seven years imprisonment. H'rg Tr. 27:4-18; ECF No. 8-2:55. It is silent on the issues of concurrency with the Tulsa County cases and jail time. However, the following excerpt from the Oklahoma Court of Criminal Appeals' decision affirming his conviction in CF-1981-166 sheds some light on Petitioner's movement history during this time period:

> In the present case, the record reveals that the information was filed on December 10, 1981, and the appellant was brought to trial on October 26, 1983. A further review of the record reveals that the appellant is partially responsible for the delay. He was scheduled on the Cherokee County District Court's jury docket in March, 1982. However, he escaped from the county jail on March 7, 1982.
>
> The appellant was eventually captured and confined in the Tulsa County Jail on unrelated charges. Thereafter, per an application filed by his attorney, he was returned to the Cherokee County District Court on May 3, 1982, for a sanity hearing. From there he was committed to the Eastern State Hospital in Vinita, Oklahoma, for a determination as to his competence to stand trial. The medical staff at Vinita found him to be competent and released him from the hospital on May 17, 1982.
>
> The appellant was again scheduled for trial on November 4, 1982. However, he was incarcerated in the Tulsa County Jail awaiting arraignment for charges concerning another matter. The district court's next jury docket was in March, 1983. The appellant was passed off the docket this time, at

> the request of his attorney, to provide an opportunity for
> them to reach a plea agreement with the federal authorities
> on federal charges filed against appellant. The appellant was
> finally brought to trial during the district court's next jury
> docket in August of 1983.

Plaintiff's Reply to Response, 20; ECF No. 12-1:2; *Johnson v. State*, 761 P.2d 484, 487-488 (Okla. Crim. App. 1988).

### D. Facts Concerning Street Time

After being returned to Oklahoma pursuant to a parole revocation warrant, Petitioner was apparently housed at the Diamondback Correctional Facility from August 2002 to February 14, 2003. *See* Petition, ECF No. 1-2:9. When Petitioner's parole was revoked in December of 2002, Governor Frank Keating granted Petitioner street time. Hr'g T. 53:17-24; 54:1-7.

Mr. Rabon testified that street time runs from the date of parole until the issuance of a parole violation warrant. Hr'g Tr. 54: 10-18. On August 12, 2002, a form entitled "Street Time Credit Review" was prepared by ODOC in connection with Petitioner's pending parole revocation proceeding. Supplemental Response, Ex. 3; ECF No. 17-3:1. According to that document, Petitioner was paroled on April 10, 1992, and an ODOC parole violation warrant was issued on April 3, 2002—stopping the running of street time. *Id.* The document shows Petitioner's "Current Release Date" to be 20 years, 5 months, and 15 days. *Id.* The "Amount of Applicable Street Time" is listed as 9 years, 11 months, and 23 days. *Id.* The current release date with the application of street time was listed as 10 years, 5 months, and 22 days. The Street Time Credit Review form

shows that application of all street time renders a discharge date of September 25, 2012. *Id.*

Mr. Rabon testified as follows with regard to the Street Time Credit Review form:

> Well, this form has a long history. And when street time came about October 1st of 1981, there needed to be some mechanism for letting the governor know how much street time was available. Because in 1981, a parole was revoked either in full or not at all or there were no partial revocations. In 1981, there's actually a person who worked in the governor's office who handled the parole revocations for the governor, the paroles for the governor. And as I understand, because this was just barely before my time, this document was created in conjunction with the governor's office as a way to give the governor an idea that if parole were revoked --and, again, at that time, it could only be in full --and street time were granted, then how much time would the person then still have to do? The other side of that is, is that if street time is not granted, the governor would also have an understanding of how much time was left to do.
>
> I would liken it, though, as nothing more than a Post-it note to the governor's staff because it is purely just to give a general idea. I say that because when this form was created, and it hasn't changed much since 1981, you'll notice, and you may or may not notice, but when you look at the calculations that are done, they're based on a 30-day month, 360-day year, which is --which was something that was done for years and years calculating inmate sentences. That changed in 1986 and we went to actual days. So I say that all because today when we give street time, it is the actual days you were on parole if street time is granted. If you were to go by this document, you would short the inmate because this is based on a 30-day month, 360-day year. And then, again, its sole purpose was just to give the governor an idea and then this is not used past that point.
>
> When the parole is revoked, this document, and I tell our staff this is a part of their training is that it is in no way to be used to grant street time. Instead, you go back to the

documents, when did the person parole and then when was the violation, the warrant issued, and determine street time that way and accurately.

Hr'g Tr. 55:6-25, 56:1-16 (emphasis added).

Upon revocation of Petitioner's parole, the street time granted by Governor Keating was applied in the following manner:

> On July 22, 1983, Mr. Johnson began serving a twenty-year sentence for the crime of Robbery with a Firearm, Tulsa County CF82-914 and a concurrent twenty-year sentence for Robbery with a Firearm, Tulsa County CF82-1034. On June 18, 1984, Mr. Johnson began serving a delayed concurrent thirty seven year sentence for Robbery with Firearms, Cherokee County CF81-166. On April 10, 1992, he paroled these sentences with 7473 days remaining on his controlling offense Cherokee County CF81-166. Mr. Johnson's file has been lost and his days remaining are calculated by using the dates on his release certificate of February 14, 2003 to calculate his days remaining as of that date and adding the 365 days of his one-year partial revocation of December 5, 2002.

> 57 O.S. 350 gives the Governor the discretion to grant or deny time spent on parole toward the service of a parole revocation and the authority to revoke all or part of the parole. 'Department of Corrections' policy in OP-060211, Sentence Administration, states that the "amount of street time available for credit toward completion of the parole revocation will terminate" when the parolee is "arrested on a new charge that results in time to do and bond is not made," or a parole warrant is issued, whichever comes first. When an offender violates their parole, the days spent on parole may be granted toward the completion of their sentence if street time is subsequently granted by the Governor.

> While on parole, Mr. Johnson violated the rules and conditions of his parole. A parole warrant, stopping the street, was issued on April 3, 2002. Mr. Johnson accumulated 3646 days of street time from the date of parole on April 10, 1992 until the date of the parole violation

> warrant April 3, 2002. On August 16, 2002, Mr. Johnson was returned [to] custody as a parole violator and on December 5, 2002 the Governor partially revoked one year of the parole and granted him street time toward the revocation of parole. After serving the partial revocation, Mr. Johnson was released on February 14, 2003 upon receipt of the Governor's order and application of 183 days time served awaiting parole revocation from August 16, 2002 to February 14, 2003 and 182 days of street time. The days left to serve on the parole were reduced by one year leaving 7108 days remaining to serve on the parole.

ECF No. 17-10:1 (Affidavit of Kevin Moore, ODOC Administrative Programs Officer, Sentence Administration). Accordingly, the undersigned finds that Petitioner was credited with a total of 182 days of street time in connection with his 2002 revocation of parole.

## IV. ANALYSIS AND CONCLUSIONS OF LAW

### A. Ground One – Jurisdictional Challenge

In Ground One, Petitioner claims the State of Oklahoma relinquished jurisdiction over him by allowing him to return to the State of Washington to continue serving a suspended state sentence there, even though he was still subject to parole in CF-1981-166. He alleges: "Petitioner, by mistake or design, was paroled by the State of Oklahoma, with a consecutive tolling in another jurisdiction." *See* Petition, ECF No. 21:1. He further alleges: "the [2002] parole by the Governor of the State of Oklahoma, to a consecutive case in another jurisdiction ends the rest of the sentence in [Cherokee County Case No.] CRF-81-166." *See* Petition, ECF No. 1:22. Petitioner contends that the actions taken by the State of Oklahoma constituted a pardon, and so the State of

Oklahoma had no further authority over him. Accordingly, Petitioner argues the State of Oklahoma acted without jurisdiction when it revoked his parole on August 5, 2009.

The Oklahoma Court of Criminal Appeals rejected this claim on the following basis:

> Petitioner has failed to establish entitlement to post-conviction relief. The documents used by Petitioner to support his claims do not establish that his parole in February 2003 was in the nature of a pardon. The documents do not establish that the 2003 parole was done for purposes of surrendering him for prosecution in another state. *Contra Ex parte Guy*, 1928 OK CR 273, 269 P. 782. The documents do not contain conditions that are nullities, such as providing for his return to Oklahoma authorities based upon the results of his prosecution in the other state. *Id*. The documents indicate Petitioner agreed to and accepted the parole, including the terms and conditions attached thereto. *Contra Jones v. Rayborn*, 346 S.W. 2d 743 (Ky. App. 1961) [*overruled by, Com. v. Hale*, 96 S.W.3d 24 (Ky. Jan 23, 2003)]; *Jones v. Morrow*, 121 P.2d 219 (Kan. 1942). Petitioner has not established that his parole was revoked for anything other than legitimate parole violations. He has not established that the District Court of Cherokee County erred or abused its discretion in denying his application for post-conviction relief. 22 O.S. 2001, § 1087. Therefore, the order of the District Court of Cherokee County denying Petitioner's application for post-conviction relief in Case No. CRF-1981-166 should be, and is hereby, AFFIRMED.

*See* Response, Exhibit 2; ECF No. 8-3:2-3.

The undersigned finds that Petitioner's claim in Ground One raises only an issue of state law. The federal writ of habeas corpus "shall not extend to a prisoner unless" he is "in custody in violation of the Constitution or laws" of the United States. 28 U.S.C. § 2241(c)(3). Here, Petitioner challenges the scope of the authority of the State of

18

Oklahoma as to matters of parole, parole revocation, and supervised probation when there is interplay with other state convictions.[8]  These matters involve questions of state law and are not proper grounds for federal habeas corpus relief. *See Overturf v. Massie*, 385 F.3d 1276, 1279 (10th Cir. 2004); *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000). Petitioner has cited no federal law holding that, under the circumstances presented, the State of Oklahoma lost jurisdiction to revoke his parole. Accordingly, relief on Ground One of the Petition should be denied.

### B. Ground Two – Failure to Deduct Creditable Time

#### 1. Jail Time

Matters relating to sentencing and service of a sentence generally do not raise issues of federal constitutional concern unless the sentence imposed is wholly unauthorized or exceeds the statutory limits:

> We are limited to determining "whether a conviction violated the Constitution, laws, or treaties of the United States." *Johnson v. Mullin*, 505 F.3d 1128, 1141-42 (10th Cir. 2007) (internal quotation marks omitted). A state court's denial of pre-sentence time credits can pose Fourteenth Amendment issues when the imposed state sentence together with the pre-sentence custody exceeds the statutory maximum. *Hall v. Furlong*, 77 F.3d 361, 364 (10th Cir.1996); *Vasquez v. Cooper*, 862 F.2d 250, 254-55 (10th Cir.1988). But where a state court sentence and pre-sentence custody total less than the maximum sentence, these Fourteenth Amendment issues are not present. "The period of incarceration [less than the statutory maximum] is necessarily discretionary with the sentencing judge." *Vasquez*, 862 F.2d at 255.

---

[8] Although Petitioner also received a federal conviction, that conviction is unrelated to the claims he brings in this lawsuit. Rather, Petitioner's claims involve the interplay between the Oklahoma State convictions and the Washington State convictions.

Defendants have "no right to a particular sentence within the statutory limits." *Id.*

This type of Fourteenth Amendment claim is not present here. [Petitioner] has never argued, either in the district court or in this court, that his sentence plus pre-sentence detention exceeds the statutory maximum. In fact, the [Magistrate Judge], as an alternative holding, concluded that [Petitioner] received less than the maximum sentence....

And although [Petitioner] invokes the Eighth and Fourteenth Amendments, he does not articulate in any way how the state court violated those rights. His application for a COA solely argues that the state sentencing court erred when it allegedly refused to credit his pre-custody time.

A state court's denial of credits for pre-sentence custody is a matter of state law where, as here, the petitioner does not claim that the denial of good time credits exceeds the statutory maximum and where he fails to allege any other constitutional theory. *Campbell v. Williams*, 66 Fed. Appx. 170, 173 (10th Cir. 2003); *Wishom v. Roberts*, 37 Fed. Appx. 338, 339-40 (10th Cir .2002). Because [Petitioner] asks this court to examine a question of state law, he does not to [sic] make "a substantial showing of the denial of a constitutional right." *Johnson*, 505 F.3d at 1141 (errors of state law alone are not cognizable in habeas).

*Johnson v. Oklahoma*, 382 Fed. Appx. 755, 756 (10th Cir. June 15, 2010) (record citations omitted); *accord Munn v. Ward*, No. 98-6207, 1998 WL 764651, at *2 (10th Cir. Oct. 28, 1998) ("To obtain federal habeas relief based on an excessive sentence, a litigant must show that his sentence exceeds or is outside the statutory limits, or is wholly unauthorized by law." (internal quotation marks omitted) (unpublished op.)); *see also Handley v. Page*, 279 F. Supp. 878, 879 (W.D. Okla. 1968) ("Matters relating to sentencing . . . are governed by state law and do not raise a federal Constitutional question."), *aff'd*, 398 F.2d 351 (10th Cir. 1968) (per curiam); *Newell v. Page*, 280 F.

Supp. 203, 204 (N.D. Okla. 1968) ("In effect, the Petitioner asked that he be allowed credit on the sentence he is presently serving for time spent in jail prior to imposition of the sentence. Whether or not such credit is to be allowed is a matter of state law."); *see also Campbell v. Williams*, No. 02-2236, 66 Fed. Appx. 170, 173 (10th Cir. May 13, 2003) (petitioner's claim that he should receive credit for pre-sentence time he spent at home wearing a monitoring device is an issue of state law).

Here, Petitioner does not and cannot claim that his sentence exceeds the maximum allowed by law. Okla. Stat. tit. 21, § 801 provides that the maximum sentence for robbery with a firearm is life imprisonment. Petitioner received a sentence of thirty-seven years. Accordingly, Petitioner has failed to raise a matter cognizable in a federal habeas action, and the undersigned recommends that his request for federal habeas relief with regard to jail time be denied.

### 2. Street Time

The authority for a grant of street time credits upon revocation of parole is governed by Oklahoma statute:

> A. Every person, hereinafter referred to as "convict", who has been or who in the future may be sentenced to imprisonment in any state penal institution shall, in addition to any other deductions provided for by law, be entitled to a deduction from his sentence for all time during which he has been or may be on parole. The provisions of this section are hereby declared to be both retroactive and prospective, and to apply to convicts who are on parole on the effective date of this act as well as to convicts who may be paroled thereafter; and *shall at the discretion of the paroling authority apply to time on a parole which has been or shall be revoked.*

B. Beginning November 1, 1987, the paroling authority also shall have the discretion to revoke all or any portion of the parole.

Okla. Stat. tit. 57, § 350 (Westlaw 2012) (emphasis added).

The policy of the Oklahoma Department of Corrections provides as follows with regard to the crediting of street time:

### C. Time Spent Under Parole Supervision (Street Time)

Upon the re-commitment of a parole client to complete the service of a sentence pursuant to a parole revocation or anticipated parole revocation, the time spent under parole supervision may be credited toward completion of such sentence at the discretion of the paroling authority. However, if this period is not approved by the paroling authority, it will not be included as service time and will be considered non-creditable time. This will include time periods spent incarcerated on consecutive cases after having rebilled by parole. The amount of street time available for credit toward completion of the parole revocation will begin upon the date of parole and will terminate on one of the following applicable circumstances:

1. If the parolee is arrested on a new charge that results in time to do and bond is not made, the date of arrest is used to calculate street time. The jail time earned will subsequently be applied to the new conviction.

2. If the parolee is arrested on a new charge which results in time to do and bond is made, street time continues to run until the date of conviction, if the date of conviction is prior to the date of the parole violation warrant. If not, use the date of the warrant.

3. If the parolee is arrested on a new charge that results in a suspended sentence or time in the county jail, the date of the Department of Corrections warrant is used to determine street time.

4. If the parole is being revoked due to technical violations

> only or pending charges, the date of the Department of
> Corrections warrant is used to determine street time.

Supplemental Record, Ex. 12; ECF No. 17-12:37-38 (OP-060211, Classification) (emphasis added). Mr. Rabon testified that this policy has not changed since 1981. Hr'g Tr. 105:25, 106:1. The statute giving discretion to the paroling authority to grant street time was promulgated in 1981.

Respondent argues that a grant of street time can only be applied to that portion of the sentence that is revoked:

> The petitioner's assertion of an entitlement to nearly 10 years of additional "street time" credit is that when Governor Keating granted credit for street time, it was meant to be credited against the entire remaining sentence, and not just the partial revocation of one year. The petitioner has not supported that assertion with any authority that is on point. In fact, the petitioner's position is directly contrary to DOC policy. Respondent has attached the entirety of OP-060211 hereto as Exhibit 12 and particularly directs this Court's attention to Part 5(C), at pages 37-38. The policy makes clear that "street time" credit is available "for credit toward completion of the parole revocation." (Emphasis added). The petitioner has failed to show that the DOC's policy is an incorrect reading of Okla. Stat. tit. 57, § 350(A) (1987) or that the DOC has applied that policy inconsistently or incorrectly in his case.

Supplemental Response, 10. Upon review of the statute in question and the administrative policies applying it, the undersigned finds that Petitioner's claim that he was not granted the correct amount of street time raises an issue of state law that is not cognizable in this habeas action.

"[A] state creates a protected liberty interest by placing

23

substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) [*abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472, 483-84 n. 5]. "[A]n individual claiming a protected [liberty] interest must have a *legitimate claim of entitlement* to it." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459 (1989) (emphasis added). An abstract desire or unilateral hope do not establish a protected interest. *Id.* "The most common manner in which a State creates liberty interest" is not only "by establishing 'substantive predicates' to govern official decisionmaking ...," but *"by mandating the outcome to be reached* upon a finding that the relevant criteria have been met." *Id.* at 462, 109 S.Ct. at 1909 (emphasis added).

*Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1569-1570 (10th Cir. 1993). Here, Okla. Stat. tit. 57, § 350 meets none of the requisites needed to create a liberty interest in street time. First, the statute specifically provides that the decision to grant street time in the event of a parole revocation is discretionary. Furthermore, there are no substantive predicates governing the decision to grant or not to grant street time upon parole revocation. Obviously, since no substantive predicates exist, there is nothing to mandate the outcome upon application of those criteria.

To illustrate, the Oklahoma street time statute can be compared to the Texas statute governing entitlement to street time upon parole revocation:

> If the parole, mandatory supervision, or conditional pardon of a person other than a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. *For a person who on the date of issuance of a warrant or summons initiating the revocation process is subject to a sentence the remaining portion of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without*

24

> *credit for the time from the date of the person's release to the date of revocation. For a person who on the date of issuance of the warrant or summons is subject to a sentence the remaining portion of which is less than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance of the warrant or citation.*

Tex. Government Code Ann. § 508.283 (West 2012). The statute specifically denies street time to those convicted of certain crimes, provides substantive criteria to determine if those who are otherwise eligible shall receive it, and then mandates the outcome if those criteria are met:

> Before September 2001, Texas law allowed the Board of Pardons and Paroles to disregard the street time a prisoner accumulated while on release. Prisoners had no liberty interest in retention of street time upon revocation of release status. However, it is possible that amendments to the relevant statute have created a protected liberty interest in retention of street time by some prisoners whose release was revoked after September 1, 2001.

*Haltom v. Owens*, 294 Fed. Appx. 917, 918-919 (5th Cir. 2008).

In this district, the lack of a liberty interest in street time under Oklahoma law was also mentioned in a Report and Recommendation to dismiss a petition as untimely:

> Even if this claim is considered timely, it would not entitle Petitioner to habeas relief because his allegation that the denial of parole street time credits violates state law fails to state a cognizable claim for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a

25

> conviction violated the Constitution, laws, or treaties of the United States"; *see also Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir.2002)(noting errors of state law do not warrant federal habeas relief). Moreover, because an award of street time credits is discretionary with the paroling authority . . . Petitioner cannot show a liberty interest in street time credit so as to implicate any right to due process.

*Williams v. Mullins*, No CIV-08-1303-HE, slip op. at n. 9, 2009 WL 2706542, *5 n. 9 (W.D. Okla. Nov. 26, 2008) (Roberts, M.J.), *adopted,* 2009 WL 2706542, *1 (Heaton, J.) (W.D. Okla. Aug. 27, 2009).

Even if Petitioner were correct that the Oklahoma Department of Corrections has misinterpreted application of the street time statute in connection with partial revocations, "We have long recognized that a 'mere error of state law' is not a denial of due process. If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.' *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982) (citations omitted). Accordingly, the undersigned finds that Petitioner's claim that he was not credited with the correct amount of street time fails to raise an issue cognizable in a federal habeas action, and relief should therefore be denied.

## RECOMMENDATION

In light of the foregoing, it is recommended that the Petition for a Writ of Habeas Corpus be **DENIED.** Petitioner is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by **June 13, 2013**. Fed.R.Civ.P. 72. Failure to make timely objection

26

to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir.1991). This Report and Recommendation **terminates all matters** referred to the undersigned in the above captioned case.

     **ENTERED** on May 23, 2013.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE